Filed 9/9/22  P. v. Brychta CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>CORY SCOTT BRYCHTA,<br><br>　　Defendant and Appellant. | 2d Crim. No. B313752<br>(Super. Ct. No. 20F-04568)<br>(San Luis Obispo County) |

A jury convicted Cory Scott Brychta of driving under the influence of a drug causing injury (Veh. Code, § 23153, subd. (f); count 1), leaving the scene of an accident causing injury (*id.*, § 20001, subd. (a); count 2), possession of heroin (Health & Saf. Code, § 11350, subd. (a); count 3), possession of methamphetamine (*id.*, § 11377, subd. (a); count 4), and possession of drug paraphernalia (*id.*, § 11364, subd. (a); count 5). As to count 1, the jury found true the allegations that appellant

caused great bodily injury to the victims (Pen. Code,[1] § 12022.7), and that he caused injury to more than one victim (Veh. Code, § 23558).

In a bifurcated proceeding, the trial court found true the allegations that appellant had one prior serious felony conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)) and section 667, subdivision (a).

The trial court sentenced appellant to state prison for a total term of 17 years, calculated as follows: as to count 1, six years (the upper term of three years, doubled due to the prior strike), plus two three-year great bodily injury enhancements, and five years for the Penal Code section 667, subdivision (a) enhancement. The court imposed concurrent terms on the remaining counts. We affirm.

FACTS

On the afternoon of July 27, 2020, Brychta was driving on 24th street in Paso Robles. The street has one lane each way. At about 3:00 p.m., Brychta crossed a double yellow line and struck a Lexus sports utility vehicle (SUV) head-on. The SUV's airbags deployed and it automatically called 911. Brychta's car left no skid marks.

Brianna Mayer was driving the SUV and Jeffrey Kim was a passenger. Kim was able to get out of the car. Mayer was held inside by the airbags. Brychta got out of his car, looked toward Kim, and asked if they were okay. Kim said they were, and Brychta walked away from the scene.

Police Officer Brett Mobley arrived at the scene shortly thereafter. Mobley was in uniform and driving a marked police

_____

[1] All further references are to the Penal Code unless otherwise indicated.

car. Brychta walked past Mobley without saying anything. A person at the scene told Mobley that a man who was involved in the collision was walking eastbound on 24th street. Mobley saw Brychta walking eastbound about 400 feet away.

When Mobley contacted Brychta, he was walking away from the scene of the collision. Brychta was wearing a backpack and carrying a water bottle, a cell phone, and the keys to his car. Brychta appeared nervous and was speaking incoherently about a dog.

Mobley asked Brychta about his involvement in the collision. Brychta replied that a person named Cindy was the driver and he was a passenger. When Mobley pointed out the seatbelt marks on his body showed he was the driver, Brychta admitted he was. Brychta told Mobley that he ran from the scene because his dog ran up the hill.

Brychta exhibited signs of being under the influence of drugs. When asked by a paramedic at the scene, Brychta denied using drugs or alcohol. A search of his backpack revealed several used syringes, a methamphetamine pipe, and a scale. Brychta's blood tested positive for methamphetamine and opiates.

Approximately four or five feet from the driver's side of Brychta's car police found a syringe with a dark fluid in it. Police also found Brychta's California identification card two or three feet from the syringe. The syringe contained methamphetamine and heroin, commonly known as a "speed ball."

Mayer and Kim were transported by ambulance to a hospital. Mayer sustained a concussion and still suffers from neck pain. She gets migraines more often than she did before the collision. Kim sustained a broken clavicle, requiring surgery.

3

DEFENSE

Brychta did not testify or offer other evidence.

DISCUSSION

I.

*Defense of Necessity*

Brychta contends the trial court erred in failing sua sponte to instruct on the defense of necessity as it relates to count 2, leaving the scene of an accident causing injury.

Brychta claims he was required to leave the scene of the collision to chase after his dog. He argues that he had an affirmative duty to care for his dog. (Citing Pen. Code § 597.1, subd. (a) [animal neglect].) He also argues a dog on the highway presents a traffic hazard to motorists.

When a driver is in an accident resulting in injury, the driver is required to immediately stop at the scene of the accident; provide his name, address, the vehicle owner's name and address; and the vehicle registration number to the driver or occupants of the other vehicle; and render reasonable assistance to any injured person. (Veh. Code §§ 20001, subd. (a), 20003; *People v. Scheer* (1998) 68 Cal.App.4th 1009, 1027.) Brychta's concern for his victims was limited to asking if they were okay as he headed down the road. That fell somewhat short of his legal obligations.

The trial court has a sua sponte duty to instruct on a defense only where there is substantial evidence supporting the defense. (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49.)

CALCRIM No. 3403 is the instruction on the defense of necessity: The defendant is not guilty of leaving the scene of an accident causing injury if he acted because of legal necessity. In order to establish this defense, the defendant must prove that: 1)

4

~~He~~ acted in an emergency to prevent a significant bodily harm or evil to himself or someone else); 2) he had no adequate legal alternative; 3) his acts did not create a greater danger than the one avoided; 4) when he acted, he actually believed that the act was necessary to prevent the threatened harm or evil; 5) a reasonable person would also have believed that the act was necessary under the circumstances; and 6) he did not substantially contribute to the emergency. The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard of proof than proof beyond a reasonable doubt. To meet the burden of proof by a preponderance of the evidence, the defendant must prove that it is more likely than not that each of the six listed items is true.

There is no substantial evidence that Brychta acted in an emergency to prevent a significant bodily harm or evil to himself or someone else. His dog ran away. There is no evidence that the dog was creating a traffic hazard or any other hazard that required his immediate attention. Brychta's speculation to the contrary is not evidence. The trial court did not err in failing to instruct on necessity.

Moreover, had the trial court erred, it would have been harmless by any standard. CALCRIM No. 3403 requires the defendant to show that he did not contribute to the emergency. The undisputed evidence is that Brychta caused the emergency. His dog would not have been loose had he not crossed the double line and collided with the SUV.

In addition, when Mobley contacted Brychta, he was wearing a backpack and carrying a water bottle, a cell phone and car keys. Brychta had walked past Mobley, who was in uniform and in a marked patrol car, without saying anything. Brychta

5

told Mobley that a person named Cindy was driving. It is obvious Brychta's intent was to flee the scene of the collision he caused.

II.

*Dominion and Control Over Drugs*

Brychta contends there is no substantial evidence to support his convictions for possession of heroin and methamphetamine as alleged in counts 3 and 4.

In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient variety. (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.) We have no power on appeal to reweigh the evidence or judge the credibility of witnesses. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.) We must affirm if we determine that any rational tier of fact could find the elements of the crime beyond a reasonable doubt. (*Johnson*, at p. 578.)

The convictions were based on drugs found in a syringe located four or five feet from the driver's side of Brychta's car. Brychta's identification card was two or three feet from the syringe. Brychta was found to be under the influence of drugs similar to those found in the syringe. Used syringes were found in Brychta's backpack. The conclusion that Brychta possessed the drugs is inescapable.

Brychta's argument appears to be based on the theory that he lacked custody and control of the drugs at the time the police found the syringe. But he was charged with possession of the drugs on the day of the collision. It is obvious he had custody and

6

control of the syringe containing the drugs in his car immediately prior to the collision.

## III.

### *Five Years Serious Felony Enhancement*

Brychta contends the trial court applied the wrong standard in denying his request to dismiss a five-year enhancement under Penal Code section 1385.

The trial court denied Brychta's motion to strike his prior serious felony conviction for residential burglary. The conviction was alleged under both the Three Strikes law and section 667, subdivision (a).

The trial court stated a number of reasons why it was denying the motion to strike the prior strike. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) Brychta has a lengthy criminal history beginning in 2011, largely driven by drug use; he was on parole when he committed the current offenses; he fled from the collision; he denied he was the driver of the car; he showed a lack of concern for his victims; he had a toxic level of drugs in his system, but denies he has a substance abuse problem.

Addressing Brychta's motion to dismiss the five-year enhancement, the trial court reviewed a number of cases to see how trial and appellate courts are looking at the issue. The court stated, "I didn't find one case where a court . . . denied a *Romero* motion but dismissed the punishment for the five-year enhancement. They seem to go hand in hand. I'm not surprised because the standard is interest of justice."

The court told Brychta that to grant a *Romero* motion, the defendant must fall outside the spirit of the Three Strikes law. The court said for it to do that "there has to be extraordinary

7

circumstances present . . . ."  The court summarized by stating Brychta does not fall outside the spirit of the "Three Strikes" law. "And it goes hand in hand with that five-year enhancement.  I do have discretion to strike the punishment.  I don't think those circumstances are present here, unfortunately."

Senate Bill No. 1393 (2017-2018 Reg. Sess.), effective January 1, 2019, amended sections 667, subdivision (a)(1) and 1385, subdivision (b) to give the trial court discretion to strike or dismiss the five-year enhancement for a serious felony prior conviction.  Brychta was sentenced after the effective date of the amendments.

In arguing that the trial court applied the wrong standard, Brychta relies on the court's statement that a denial of a *Romero* motion and the denial of a motion to strike the five-year enhancement go hand in hand.

But the court was commenting on its research into what other courts do when faced with the same issue.  The court was summarizing the results of its research, not stating a standard for sentencing.  The court recognized it had discretion.  The court stated it is not surprised that the denial of a *Romero* motion and the imposition of the five-year enhancement go hand in hand "because the standard is interest of justice."  The court also stated, "I do have discretion to strike the punishment."  The court did not state that the denial of the *Romero* motion compels it to deny the motion to strike the five-year enhancement.

Brychta also points to the trial court's statement that there must be extraordinary circumstances present.  But the court was referring to the *Romero* motion.  That is the correct statement of the law.  (See *People v. Carmony* (2004) 33 Cal.4th 367, 378.)

8

Finally, Brychta challenges the court's statement that he showed a lack of concern when he testified at trial. He claims he was masked at trial. Even assuming the court erred, it was harmless by any standard. The court cited numerous other factors in denying his motion.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.*

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9

Hernaldo J. Baltodano, Judge

Superior Court County of San Luis Obispo

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Mathews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.